## IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**C. ADAM TONEY DISCOUNT TIRES,**
**Employer Below, Petitioner**

**vs.) No. 23-ICA-25**          (JCN: 2022017596)

**ERIC COMPTON**
**Claimant Below, Respondent**

**FILED**
**June 15, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner C. Adam Toney Discount Tires ("Toney") appeals the decision of the Workers' Compensation Board of Review ("Board") dated December 20, 2022, reversing and remanding the claim administrator's order dated February 21, 2022, which closed the claim for temporary total disability ("TTD") benefits, and reversing the claim administrator's order dated April 4, 2022, which denied a request to add biceps tendonitis of the left shoulder, tendinopathy of the left shoulder, tendinopathy of the left bicep tendon, and cervical radiculopathy as compensable conditions in the claim. Respondent Eric Compton filed a timely response.[1] Toney did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On January 22, 2021, Eric Compton, a tire technician for Toney, injured his left shoulder while moving a tire at work. According to Mr. Compton, he felt a pop in his shoulder and became unable to move it. The physician who completed the Employees' and Physicians' Report of Occupational Injury form on the date of injury diagnosed a left shoulder injury and took Mr. Compton off work until an orthopedic evaluation could be accomplished. By order dated January 27, 2021, the claim administrator ruled the claim compensable for a left shoulder strain/sprain.

John M. Tabit, D.O., an orthopedic physician, began treating Mr. Compton on February 10, 2021, for a left shoulder strain. On March 18, 2021, Dr. Tabit reviewed an MRI of the left shoulder dated March 7, 2021, and assessed tendinopathy of the

---

[1] Toney is represented by Jane Ann Pancake, Esq., and Jeffrey B. Brannon, Esq. Mr. Compton is represented by Reginald D. Henry, Esq., and Lori J. Withrow, Esq.

1

supraspinatus, tendinopathy of the bicep, and a tear of the left glenoid labrum. An MRI arthrogram performed in April of 2021 was negative for a labral tear and an EMG/NCS test performed by Dr. Vaught on August 6, 2021, revealed no evidence of left cervical radiculopathy. On August 12, 2021, Dr. Tabit diagnosed rotator cuff tendinopathy, and he continued to diagnose cervical radiculopathy, although he acknowledged the negative EMG result. Dr. Tabit also extended Mr. Compton's off-work status. A cervical MRI performed on August 27, 2021, revealed mild bilateral foraminal encroachment at C3-C4 related to hypertrophy, mild disc desiccation, and a small central annular rent at C2-C3. Brittany Hamilton, PA-C, a practitioner in Dr. Tabit's office, continued Mr. Compton's off-work status at a visit on October 7, 2021.

In a memo dated November 9, 2021, Toney's managers stated they were notified on November 4, 2021, that Mr. Compton had been released to return to work without restrictions. The managers indicated that they contacted Mr. Compton and told him to report to work on November 5, 2021. However, since Mr. Compton did not return to work, or contact them, the managers asserted that Mr. Compton was terminated for job abandonment.

Dr. Tabit's office continued to treat Mr. Compton and provided a steroid injection in his left shoulder for tendinopathy of the left rotator cuff on January 6, 2022. At that visit, Dr. Tabit noted the independent medical evaluator determined that Mr. Compton could return to work; however, Mr. Compton reported that he was unable to do his job due to the pain and weakness in his shoulder and neck. On January 28, 2022, Dr. Tabit completed a Diagnosis Update request seeking to have the following diagnoses added as compensable conditions in the claim: biceps tendinitis of left shoulder, tendinopathy of the left rotator cuff, tendinopathy of the left biceps tendon, and cervical radiculopathy.

By order dated February 21, 2022, the claim administrator closed the claim for TTD benefits. This order followed an earlier notice suspending TTD benefits in November 2021 based on information from Dr. Tabit dated November 4, 2021, that Mr. Compton was at maximum medical improvement ("MMI"). Mr. Compton protested this order.

By order dated April 4, 2022, the claim administrator denied the compensability of the four conditions requested by Dr. Tabit. The claim administrator found the conditions were not causally related to the workplace injury, and that the EMG did not show cervical radiculopathy. Mr. Compton protested this order.

On May 13, 2022, Prasadarao B. Mukkamala, M.D., issued a supplemental report in which he referenced his October 28, 2021, evaluation of Mr. Compton regarding the

compensable injury of a left shoulder sprain.[2] Dr. Mukkamala noted that at the October examination, he placed Mr. Compton at MMI and determined that no further treatment was needed for the compensable injury. Additional records and a diagnosis update from Dr. Tabit were reviewed and Dr. Mukkamala opined that the conditions Dr. Tabit requested to be added to the claim were preexisting and unrelated to the workplace injury. Dr. Mukkamala determined that a single incident of working with a tire would not have caused the conditions to be continuously symptomatic. Further, Dr. Mukkamala noted the EMG was negative for cervical radiculopathy, although he admitted that Mr. Compton had radicular symptoms.

On July 18, 2022, Peter Apel, M.D., examined Mr. Compton and reviewed EMG testing that showed left carpal syndrome and cubital syndrome with evidence of serratus anterior decreased recruitment. Dr. Apel diagnosed thoracic outlet syndrome and recommended left brachial plexus decompression, and releases of the cubital tunnel and carpal tunnel. On September 16, 2022, Dr. Apel performed multiple surgical procedures on Mr. Compton's left arm. The postoperative diagnoses were left thoracic outlet syndrome, left cubital tunnel syndrome, and carpal tunnel syndrome. Dr. Apel specifically noted that the changes in the fascia of the brachial plexus were "consistent with chronic brachial plexitis/thoracic outlet syndrome."

Jonathan Luchs, M.D., authored two Age of Injury Analysis reports dated July 25, 2022, in which he opined that an MRI dated March 7, 2021, revealed chronic supraspinatus and biceps tendinopathy, AC joint arthropathy, and chronic fraying of the labrum. Dr. Luchs also found that the cervical spine MRI dated August 27, 2021, revealed degenerative disc disease and an abnormal annulus at C2-C3, which was a chronic condition.

By order dated December 20, 2022, the Board reversed the claim administrator's order and found that biceps tendonitis of the left shoulder, tendinopathy of the left shoulder, tendinopathy of the left bicep tendon, and cervical radiculopathy were compensable conditions. The Board cited the Supreme Court's decision in *Moore v. ICG Tygart Valley, LLC*, 247 W. Va. 292, 879 S.E.2d 779 (2022), and determined that the four conditions were related to the workplace injury. Although the Board noted that cervical radiculopathy was mentioned in a medical record from 2019, it found no indication that Mr. Compton received

---

[2] The Board noted that Dr. Mukkamala's October 28, 2021, report was not submitted into its record. However, we note Toney's assertion that the Board staff assured Toney that this report and the August 6, 2021, work release by Dr. Tabit, had been received and would be considered as evidence in the claim. We also note that Dr. Mukkamala's supplemental report was considered by the Board and it contained the relevant information from his earlier report. Further, there is no dispute that Dr. Tabit released Mr. Compton to return to work on November 4, 2021. Thus, to the extent, if at all, the Board failed to receive and consider evidence filed in the protest, no harm was caused and it did not affect the outcome as determined by the Board or this Court.

preinjury treatment for that condition or any of the other conditions that Dr. Tabit requested to be added to the claim. Further, the Board determined that under the *Moore* analysis, the conditions were presumed to be related to the left shoulder injury since the symptoms appeared after the injury and were continuously manifested afterward. Moreover, the Board held that Mr. Compton was not precluded from requesting additional diagnoses in the claim.

The Board also reversed the claim administrator's closure of the claim for TTD benefits because Dr. Tabit's release of Mr. Compton to return to work and Dr. Mukkamala's determination that Mr. Compton was at MMI predated the addition of the newly added conditions. Thus, the Board found there was no evidence establishing Mr. Compton was at MMI for the newly added conditions. The Board reversed and remanded the claim to the claim administrator with instructions to issue a protestable order determining the period of TTD benefits in light of the newly added conditions. Toney now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, __, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, Toney argues that the Board was clearly wrong in view of the reliable, probative, and substantial evidence on the whole record. Toney asserts that the Board erred in adding the four conditions to the claim because the conditions were degenerative, preexisting, and/or not the proper diagnoses based on the current treatment. The diagnosis of cervical radiculopathy, Toney contends, was refuted by two EMGs and the opinions of Drs. Mukkamala and Apel. Alternatively, Toney asserts that even if cervical radiculopathy is a proper diagnosis here, it preexisted the injury and was not a discrete new injury.

4

According to Toney, the Board failed to give proper weight to the preinjury medical records that mentioned cervical radiculopathy, and instead focused on irrelevant factors such as whether treatment was provided for cervical radiculopathy and whether the medical records from 2019 provided a basis for the diagnosis of the condition.

Toney also maintains that the Board erred in adding the three shoulder-related conditions to the claim since Dr. Apel diagnosed and treated Mr. Compton for thoracic outlet syndrome. Mr. Compton, Toney contends, was no longer being diagnosed with or treated for any of the conditions at issue here. Thus, if thoracic outlet syndrome is the correct diagnosis, Toney argues that it should not be obligated to pay for treatment of the four incorrect diagnoses.

Finally, Toney asserts that the Board erred in reversing the claim administrator's order that closed the claim for TTD benefits. Toney maintains that TTD was properly terminated when Mr. Compton was released to return to work in November of 2021. We disagree. We find that the Board's ruling was not clearly wrong in holding that cervical radiculopathy, biceps tendonitis of left shoulder, tendinopathy of left shoulder, and tendinopathy of left bicep tendon are compensable.

Although the EMG testing failed to reveal cervical radiculopathy, Dr. Tabit continued to diagnose the condition based on his clinical findings. Also notably, while Dr. Mukkamala did not diagnose cervical radiculopathy, when he examined Mr. Compton, he noted radicular symptoms. Therefore, we find that under these circumstances, the Board had a sufficient evidentiary basis for concluding that the diagnosis of cervical radiculopathy was not eliminated by the EMG testing.

In its analysis of whether the four conditions should be ruled compensable, the Board noted the standard set out in *Moore*. We note that in Syllabus Point 5 in *Moore*, the Supreme Court of Appeals held that:

> A claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.

*Id*. at __, 879 S.E.2d at 781.

5

We find that the Board did not err in determining that there was an insufficient basis to find that cervical radiculopathy was a preexisting condition. As the Board found, there was only the mere mention of cervical radiculopathy in preinjury medical reports, with no supporting information. Further, based on our review, we find that the Board had sufficient basis to find that the shoulder conditions sought to be added to the claim were not preexisting, but instead were causally related to the event that caused the compensable injury.

Further, we find that the Board did not err in failing to find that the diagnoses by Dr. Apel and Dr. Tabit were mutually exclusive. While the Board did not elaborate on this issue, it held that Mr. Compton was not precluded from requesting additional diagnoses in the claim. Thus, the Board determined that Dr. Tabit's diagnoses were not discredited as a result of the diagnoses by Dr. Apel, and we agree. The Board had sufficient basis for its determination that the four secondary conditions were causally related to the initial compensable injury or events that caused the compensable injury.

Finally, we find that the Board did not err in reversing the order closing the claim for TTD and remanding the claim to the claim administrator with instructions to issue a protestable order determining the period of TTD benefits in light of the added compensable conditions. Pursuant to West Virginia Code § 23-4-7a (2005), a claimant's entitlement to temporary total disability benefits ceases when he or she reaches maximum medical improvement, is released to return to work, or returns to work, whichever occurs first. As the Board noted, when Mr. Compton was placed at MMI and released to return to work, the conditions of cervical radiculopathy, biceps tendonitis of left shoulder, tendinopathy of left shoulder, and tendinopathy of left bicep tendon were not considered as they were not compensable at the time. Thus, the evidence did not establish that Mr. Compton was at MMI for the newly added conditions, or that Mr. Compton was able to return to work in light of the additional conditions.

In sum, the Board's decision does not violate any statutory provision, nor is it clearly wrong in light of the evidence, nor characterized by an abuse of discretion.

Accordingly, we affirm the Board's December 20, 2022, order.

Affirmed.

**ISSUED:** June 15, 2023

6

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen